Next is U.S. v. Follette. Good morning, Your Honor. If it pleases the Court, Tony Gallagher for Appellant Christopher George Follette. I'd like to reserve two minutes for rebuttal. I'll try to help you, but keep track of your own time as well. Thank you very much, Your Honor. This case is about due process. Due process notice. And it involves two parts of Federal Rule of Criminal Procedure 32. Rule 32H, notice of departure. And Rule 32I1C, which allows comment on matters related to the appropriate sentence. Now, reasonable minds may differ whether the additional 14 months was a departure or variance. And there was certainly no notice of a departure. But I would like to spend my argument today on 32I1C. Of course, if there are any questions with regard to the 32H issue, I would be glad to address them. 32I1C requires the Court to allow the parties to comment on the probation officer's determinations and other matters relating to an appropriate sentence. Basic due process protects a defendant's right to be sentenced only on information that was disclosed in the pre-sentence report or otherwise made known to the defendant prior to sentencing. Basic due process also protects a defendant's right to be sentenced based on accurate information that has been sifted through the adversarial process. Counsel, suppose the district court at sentencing had said, you know, a while back I read a book by Katherine McKinnon and it got me thinking that society hasn't really appreciated the harm that sex crimes cause to their victims. And so to take account of the seriousness of the offense, I'm going to go above the guidelines. Do you think the district court would have been required to give you notice and an opportunity to comment on the book? Yes, Your Honor, because if the court is basing its sentence on information that was not provided to the parties, you have to give us an opportunity to at least address that and test it under the adversarial process. But, I mean, the reason I chose that example is it seems like the statutory factors that the court is required to consider, like the seriousness of the offense, necessarily invite an assessment based on the totality of the cases that the judge has seen and things the judge has read and matters that they've thought about over the course of their life. And how could you meaningfully provide notice of all of that? Well, if it is information that the court is relying on in imposing a sentence, and here, Judge Miller, you're talking about the seriousness of the offense. Well, certainly the seriousness of the offense was revealed in the pre-sentence investigation report, so the parties were aware of the seriousness of the offense. Certainly, any sexual abuse, especially a sexual abuse by a stepfather of his stepdaughter, is horrendous. And Mr. Follett admitted that. And as you say, referring to literature may, in fact, be an influence on the district judge. And if he gives us an opportunity to address that, we certainly can address it. But if he's going to base his sentence on that information, we have to be allowed to test that information in the adversarial process. That's what we're saying here. What the district court did in Follett was not based on literature, but based on a prior case that he had sentenced some two years before Mr. Follett's sentencing. And in that particular instance, it wasn't even the same type of case. The Kutsera case, which I referred to in my brief, in which I provided the court of citation to the Anders brief that was filed by counsel in Kutsera's case, involved 36 counts of sexual exploitation of a child. True, there was no touching. But what happened was that they had a plea agreement in that case. He pled to three of those 36 counts and realized that he faced a mandatory 15-year sentence. Ultimately, his guideline range turned out to be 235 to 266 months, and the district court departed downward as far as they possibly could to 15 years. That's not at all the case with Christopher Follett. Mr. Follett had pled guilty without a plea agreement, realizing that the maximum sentence was 15 years, and the guideline range was 37 to 46 months. The criminal histories of the two individuals was different. Everything was different. Counsel, was this objection specific enough to preserve the issue? You've done, sure, lots and lots of sentencings, and district courts articulate their thoughts, including, I'm sure you've seen many times, reflections on things that Judge Miller was referencing, the judge's own experience. Now, your objection in this case is, you know, I need an opportunity to basically study up on the other cases that the court referenced in order to argue that this case is fundamentally different. Shouldn't that have been the objection? Can I have a continuance so that I can look into these other matters to the extent that the court is going to rely on them? In order to come up with the appropriate sentence in this case? Your Honor, I did not utter the words, I object and give me a continuance. That is correct. I did not do that. But certainly the discussion I had with the district court judge made out an objection to what he was doing, relying on a case that I had no idea what it was. It was not until after the case was concluded, after I went back and looked up Kutsera, tried to find Kutsera and found Kutsera, when I realized how different it was. And both the government and the district court introduced the idea of disparity for the very first time at Mr. Follett's sentencing. If the court will recall from the record in this case, the government had said we're satisfied with the findings of the PSR, we're satisfied with the guideline range, and we believe that an appropriate sentence would be within the guideline, even saying that 37 months would have been appropriate under the circumstance. To answer your question again, Judge Winn, no, I did not utter those words. But I think the record shows that I certainly objected to what the court and the government were doing. Counsel, can I ask why is this a violation of I-1C? That only requires the attorneys be allowed to comment. And weren't you allowed to comment here? I was allowed to comment, Your Honor, but it also, under the rulings of this court, in War, in Gomez-Gomez, in Gray, in Baldridge, it says that I have to be given an opportunity to speak on the issues that were raised by what the judge was talking about. I didn't know Kutsera. I didn't know Kutsera until I started this appellate brief. Your Honors, I have a little more than two minutes left. I would like to reserve that time for rebuttal. May it please the Court, Tim Tatarka of the District of Montana on behalf of the United States. I want to pick up, in response to Judge Bumate's question, because I do think the Rule 32 I-1C is clear that what it requires is an opportunity for attorneys to comment. And I think this is a good example of a situation, and I would recommend the Court's attention to Excerpts 69 and 70, where this discussion occurred. The Court, in fact, outlined the facts from that case that the Court was, that the Court felt were relevant and wanted the attorneys to comment on. So there is no question that the Court outlined exactly what about that case made him, made him. But how can counsel meaningfully comment if he doesn't know the facts of that case, such that he can make the arguments about the distinguishing factors that he's now making on appeal? Because, Your Honor, I think it's really no different than, as often happens in this Court, where the Court says, either an actual case or a hypothetical, saying, here are the facts that I want you to consider and tell me how this is, why this is relevant to, you know, and respond to it with respect to my particular question. And the judge's interest in this case wasn't Coonsera generally. His focus is, these are the sentences that I have given with respect to other crimes against children that aren't, you know, that weren't hands-on offenses and this kind of, this actual rape that I have in front of me. And he gave, and really the only real salient fact with respect to Coonsera was that there was a 15, that it was child exploitation with a 15-year mandatory minimum, and that's what the Court had to give and what the Court gave. Those are the relevant facts with respect to that case. And, again, the issue that the Court wanted the parties to address was this question of, here we have the sexual, and if you look at excerpts of the record, page 70, you know, the Court makes clear the point that he wanted the parties to address, the question that he had there. This is actual sexual violation of a 13-year-old girl 15 to 20 times, as the Court notes, without respect to, you know, practicing safe sex, which resulted in another victim. How that compares to these other offenses that were not hands-on or, and in the case of Gobert was a one-time offense over the close. How does that compare? He provided that information and provided the parties an opportunity to respond to that. And so, and there's no question this is plain error review in this case. Mr. Gallagher did, you know, respond to that, to the Court on the substance of it. This was his response to what was posed by the Court. He did not object, did not ask for a continuance. We're looking at plain error, and under the plain error standard with respect to sentencing, what the Court has to find is that there's a reasonable likelihood that, but for the error, there would be a different sentence. And, again, I would recommend the Court to page 70 of the record, but also to 81 and 82, where the Court explains his reasons for the upward departure. I don't think, even if the Court thought there was an error here, that there is a reasonable likelihood that the Court would arrive at a different sentence. And also, to compare this case to the war case, this isn't a case where this was a highly technical question of the facts in another case or facts in another case which led to conclusions about a fact here. It was, as in war, a common-sense analysis. The Court said, I have sentenced higher either because of a mandatory minimum or because of the guidelines with respect to these other cases which were much less serious, so I'm going to depart upward here. That is the kind of common-sense analysis that doesn't require looking up in detail what the specific facts of Coonsera were. Briefly, with respect to departure or variance, it's clear that what this Court does is look to the context to determine whether or not it's a variance or a departure. The Court did the guideline analysis and then was clearly in the process of doing his analysis under the 3553 factors when he made the decision to go upwards. And this Court has found the fact that he did use the word depart rather than vary is something this Court can look past and look at the actual context because we sometimes use those terms loosely. If the Court has any other questions. Thank you, Your Honors. We don't have any further questions. Thank you very much, Counsel. Your Honors, when this Court wants counsel to comment on a case, it lets them know well in advance that they would like us to address XYZ or United States v. Smith. The district judge didn't even do that here. They didn't give me or he didn't give me an opportunity to look at Coonsera and show how different it was. Your Honor, before. Counsel, the government was correct that we often do pose hypotheticals and ask you to respond to hypotheticals at the, you know, right here and then. How is this any different? If the judge said, you know, in my experience, I've sentenced, you know, sexual cases without any touching to 15 years and this is only 36 months, how is that a fair sentence? Well, let me answer that in two ways. First of all, a hypothetical is not based on information outside the record other than what's coming out of the judge's head, trying to take what's in the record and put that in a different view. But here, when the district judge referred to another case, a sexual case, it wasn't a sexual call. It was a completely different statute, a statute requiring a 15-year mandatory minimum. And that was a prosecutorial decision. If the court looks at the record in this case, the district judge was not so much disputing the fact that Mr. Follett deserved to go to prison. He was saying that you, government, had made it very difficult for me in this other case to depart downward. But it seems, I mean, to follow up on Judge Bumate's question, it seems like the rule you're advocating for would just incentivize district judges to be a little bit vaguer in the questions they asked. I mean, if the judge had just said, you know, instead of referencing a specific case, had said, well, you know, I've seen people who got higher sentences for less bad things, and I want to avoid disparities, your objection seems like it would evaporate. But I'm not sure how you'd really meaningfully be better off. Most respectfully, Judge Miller, no, my objection wouldn't evaporate because there's nothing in this record, nothing, until the sentencing proceeding where disparity becomes an issue. So if the judge is going to rely on departing upward or varying upward on the disparity factor, he has to let me know. I have to be given an opportunity to address that. Well, disparity is part of the law. He has to always consider disparity. Well, he has to always consider it, but if he's going to depart upward or vary upward on information that I don't have at my disposal in order to show that disparity is not appropriate in this case, he has to let me know. Yeah, disparity comes up quite frequently in the district court, but generally comes in the context of one big conspiracy where all the lawyers know the roles that different defendants play, right? Right. Your argument is really this is going to a totally separate case without giving you an opportunity to study up on that different case. Exactly, Your Honor. And my final point is, and I note that I'm way over time, before depriving someone of their freedom, he must be given notice and meaningful opportunity to be heard. When court considers information from beyond the record and without first notifying a defendant of intent to do so, the court eliminates the intertwined guarantees of fairness in the adversarial process and confidence in a just result. In short, allowing Mr. Follett's sentence to stand produces a miscarriage of justice. His sentence should be vacated and remanded to the district court for resentencing. Thank you very much, Your Honors. All right. Thank you very much, both sides, for your helpful arguments. In this case, the matter is submitted. Am I right, Mr. Gallagher, that this is the last time we'll see you in the Ninth Circuit, at least as an advocate? Your Honor, actually, that depends on whether or not, first, the district court allows me to join the CJA panel, and, second, whether or not I have the pleasure and privilege to appear before this court as CJA counsel at some time in the future. But, indeed, it is my last appearance as the federal defender for the District of Montana. Congratulations. Thank you very much.
judges: NGUYEN, MILLER, BUMATAY